UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ELBA I. NIEVES,

      Plaintiff,

v.                           CASE NO: 2:19-cv-474-FtM-38NPM

WAL-MART STORES INC.,

      Defendant.

_____/

**DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT**

      Defendant, WALMART STORES EAST, LP, (incorrectly named "WAL-MART STORES INC.")[1] (hereinafter "Walmart"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, hereby moves this Honorable Court for entry of Final Summary Judgment against Plaintiff, and as grounds therefore states:

**INTRODUCTION**

      Plaintiff's Amended Complaint sets forth a cause of action in general negligence, negligence under the doctrine of respondeat superior, negligent hiring and retention, and negligent supervision all arising out of a slip and fall at Walmart on May 7, 2017. [DE 25, ¶ 6; 21; 29; 33; 40]. Plaintiff alleges that Walmart maintained the "premises in such a manner where the areas became and/or caused a slippery hazard when liquid had accumulated when left unattended".  [DE 25, ¶ 9]. Based

---

[1] Defendant has requested Plaintiff to stipulate to substituting the proper entity and will file such stipulation with this Court upon obtaining counsel's agreement.

upon the record evidence, there is no genuine issue of material fact, and summary judgment should be granted in this case.

## MEMORANDUM OF LAW

### I.   STATEMENT OF MATERIAL FACTS

1.     On May 7, 2017, Plaintiff visited the Walmart store located at 1619 Del Prado Boulevard in Cape Coral, Lee County, Florida. [DE 25, ¶ 7].

2.     On the date of the alleged incident, Plaintiff went to  Walmart to purchase salad. See Deposition Elba Nieves p. 48:20-49:1, attached hereto as Exhibit "A". Plaintiff had been in this particular Walmart on prior occasions and considered this store to be her normal location to shop. Ex. A at 49:2-49:15.

3.     On the prior occasions that Plaintiff had been to the store she never observed any liquid on the floor. Ex. A at 61:3-61:5

4.     Plaintiff has returned to the subject premises since the alleged accident and has never seen liquid on the floor during her subsequent visits. Ex. A at 70:16-70:23.

5.     Upon entering the store, Plaintiff went directly to the produce department. Ex. A at 49:16-49:24. Plaintiff was pushing a shopping cart and wearing rubber flip-flop sandals. Ex. A at 49:25-50:2; 51:9-51:14.

6.     As Plaintiff was walking in the produce department, she slipped and fell. Ex. A at 52:20-53:2.

7.     Plaintiff struck her left knee on the ground in the fall and her right knee slid out in front of her striking the shopping cart. Ex. A at 56:20-56:23; 57:4-57:19.

8.   Just before she fell, Plaintiff was looking to the front area of the produce department and not at the floor. Ex. A at 56:6-56:8.

9.   Plaintiff did not observe any liquid on the floor prior to her fall.

> **Q:   Did you see the wetness on the floor before you fell?**
>
> **A:   No.**

Ex. A at 53:16-53:18.

10.   After the fall, Plaintiff looked behind her and saw a puddle of clear liquid the size of a watermelon. Ex. A at 53:19-53:23; 54:5-54:22.

11.   Plaintiff did not see any debris, garbage, fruits, or vegetables on the floor following her incident. Ex. A at 53:24-54:2.

12.   There were no cups or bottles on the floor that indicated the liquid's source. Ex. A at 54:23-54:25.

13.   Plaintiff saw a mark from her own sandal but did not see any other markings, tracks or footprints through the liquid.

> **Q:   Other than your sandal mark, did you see any other footprints in the liquid? You said your sandal made a mark; right?**
>
> **A:   Yes.**
>
> **Q:   Did you see any footprints in the liquid?**
>
> **A:   No.**

Ex. A at 62:7-62:12.

14.   Had Plaintiff been looking at the floor, she could have seen the liquid which she alleges caused her fall.

**Q:** If you had been looking down, do you think you would have seen the liquid on the floor?

**A:** Maybe.

**Q:** Was it big enough that you would have seen it? That's what I'm trying to figure out.

**A:** Maybe.

Ex. A at 56:6-56:14.

15.   Plaintiff did not know and could not recall the type of liquid, where the liquid came from, or how long it was on the floor.

**Q:** Do you know where it was coming from?

**A:** Exactly where it was coming from, no; but the area was wet.

***

**Q:** Do you recall if there was water – if you saw any water near the flower – like, under the flower box?

**A:** I don't remember.

**Q:** Do you know if you saw any liquid near the side of these cooling – near these coolers?

**A:** I don't remember.

**Q:** And when you saw the liquid on the floor, did you try and figure out where it came from?

**A:** No. I only saw that it was wet. I don't know where it was coming from.

**Q:** Do you know how long the liquid had been on the floor?

**A:** No.

Q:     Could have been there five seconds? Could have been there five minutes; correct?

A:     I don't know.

Q:     You have no idea how long it was there; correct?

A:     I don't have any idea.

Q:     And you don't know where it was coming from; correct?

A:     No.

Q:     And you don't know what type of liquid it was; correct?

A:     No.

Q:     Could have been water or Sprite or some other type of liquid; correct?

A:     It was clear.

Q:     That's all you know, it was a clear liquid; correct?

A:     Yes.

Ex. A at 53:13-53:15; 59:19-60:24.

16.    Walmart was not aware that liquid existed on the floor prior to Plaintiff's alleged fall. All Walmart employees are trained and tasked with inspecting and maintaining the floors of the subject store on a continuing basis per Defendant's Policies and Procedures[2].

Q:     When customers have accidents at a Walmart, is there a specific training that you received on what to do and how to do it to make sure that the area where the accident occurred was safe?

---

[2] Defendant's Policies and Procedures are confidential materials that may be produced under seal to this Court upon request if this fact is disputed.

> **A:**   **Yes. Regarding the cleaning we have to keep going around places with a cleaning cart or with a big broom. They call it safety—safety sweep. In English it's something like sweeping to avoid accidents. It's like sweeping and make—making sure that there's no, like, glass or a spill or something on the floor, something that could be obstructing.**

See Deposition of E. Valle-Pascual, p. 9:6-9:16, attached hereto as Exhibit "B".

   17.   All Walmart employees are tasked with 'zoning' on a continuing basis which includes correcting any hazards that they may locate in the store.

> **Q:**   **Does zoning also include an associate walking around the store to check for hazards on the floor?**

> **A:**   **Yes. Each area has their department managers and their associates, and during the zoning they're looking at the floor to the – to the shelves, from the floor up into the shelves to make sure.**

> **Q:**   **When does zoning occur? Is it a constant thing that each associate is tasked with?**

> **A:**   **All – all of them are supposed to zone as they go.**

> **Q:**   **So as the associate is walking through various areas of the store, they're tasked with zoning, which includes checking for hazards on the floor?**

> **A:**   **Correct. See it, fix it.**

> ***

> **Q:**   **What is an associate supposed to do if they see something on the floor as they're zoning?**

> **A:**   **They stop, they guard it. If it's something they can't take care of with their towel in the pocket right away, they call for another associate to come and either bring the supplies they need to clean up the spill, contact maintenance, or they have the other**

> **associate guard the – the spot, and they go get the supplies.**

Depo. George Salavics, p. 62:22-63:10; 67:3-67:11, attached hereto as Exhibit "C".

18.     Pursuant to Walmart's policies and procedures a store associate inspected and zoned the area approximately **one minute** before the incident and did not see any liquid on the floor. <u>See</u> CCTV at 6:04:07 attached hereto at Exhibit "D".

19.     Discovery closed on April 30, 2020. [DE 31].

20.     Plaintiff alleges she sustained injuries to her neck, lower back, knees, and arms. <u>See</u> Plaintiff's Answers to Interrogatories attached hereto as Exhibit "E".

21.     Following the alleged accident Plaintiff received chiropractic treatment at Horizon Chiropractor and was then referred to Dr. Brodsky, an orthopedic surgeon. Ex. A at 71:9-75:12.

22.     Plaintiff has undergone cervical facet injections, a C4-C5 discectomy and insertion of MOBI-C total disc replacement.  Ex. A at 75:16-76:13.

23.     Plaintiff also treated with Dr. Matthew K. Hutchinson who performed a right knee arthroscopy and partial medial lateral meniscectomies on February 21, 2018. See Deposition of Matthew Hutchinson, D.O., p. 23:25-23:8, attached hereto as Exhibit "F".

24.     Plaintiff denied ever being seen by a physician for knee pain prior to her accident at Walmart. Ex. A at 32:1-32:4

25.     Plaintiff denied ever being seen by a physician for neck pain prior to her accident at Walmart. Ex. A at 32:5-32:7; Deposition of Marc Brodsky, p. 18:11-18:14, attached hereto as Exhibit "G".

26.     On July 21, 2015, approximately two years prior to the subject accident, Plaintiff had cervical spine x-rays taken at Carolina Imaging Center which showed straightened lordosis suggestive of spasm; anterior spondylosis consistent with degenerative changes; and decreased disc space at C5-6 consistent with degenerative disc disease. See July 21, 2015 Medical Record attached hereto as Exhibit "H".

27.     In 2015, Plaintiff treated at Grupo Medico del Noreste where she complained of cervical/trapezius pain, was diagnosed with spondylosis of the cervical region, and underwent a course of physical therapy for her cervical spine, trapezius and low back. See Grupo Medico del Noreste Records attached hereto as Exhibit "I".

28.     Plaintiff has a history of low back pain and arthritis. Ex. A at 39:10-39:20.

29.     Plaintiff has not disclosed any experts by her deadline of March 2, 2020. [DE 31]. The only disclosure made by Plaintiff was in the form of a Rule 26 disclosure wherein Plaintiff asserts her treating physicians will testify "to details of injuries suffered." See Plaintiff's Rule 26 Disclosure attached hereto as Exhibit "J".

30.     There is no admissible evidence to establish that Plaintiff's alleged injuries were caused by the fall.

31.     Defendant's orthopedic expert opined that Plaintiff's knee condition is pre-existing with degenerative disease and the treatment rendered, including surgery, was not related to her incident at Walmart on May 7, 2017. See Defendant's Expert Witness Disclosure attached hereto as Exhibit "K".

32.     Defendant's surgical spine expert opined that Plaintiff's condition is pre-existing with degenerative disease and the treatment rendered, including surgical management of the cervical spine and the multitude of pain management procedures, was not related to her incident at Walmart on May 7, 2017. See Ex. K.

## II.   STANDARD OF REVIEW

In diversity actions, federal courts must apply state substantive rules of law and federal procedural law. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938). A motion for summary judgment is a procedural matter and is governed by Federal Rule of Civil Procedure 56. Hammer v. Slater, 20 F. 3d 1137, 1140 (11th Cir. 1994). Plaintiff's negligence claim against Walmart is a substantive issue, and thus governed by Florida law. Cover v. Wal-Mart Stores, Inc., 812 F. Supp. 1215 (M.D. Fla. 1993).

Summary judgment is appropriate where "the pleadings, depositions, answers to  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Imaging Bus. Mach., LLC. V. BancTec, Inc., 459 F.3d 1186, 1189 (11th Cir. 2006) (citing Fed. R. Civ. P. 56(c)). In ruling on a Motion for Summary Judgment, the court must view all of the evidence and make all reasonable inferences in the light most favorable to the nonmoving party. Id. (citing Cruz v. Publix Super Mkts., Inc., 428 F.3d 1379, 1382 (11th Cir. 2005)). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, Rule 56(c) mandates the entry of summary

judgment. <u>See</u> <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Hilburn v. Murata Elecs. North Am., Inc.</u>, 181 F.3d 1220, 1225 (11th Cir. 1999). While courts must view evidence in the light most favorable to the non-movant, they need not allow a case to proceed to a jury based upon implausible inferences. <u>Cuesta v. School Board of Miami Dade County</u>, 285 F.3d 962, 970 (11th Cir. 2002). "The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment." <u>Rectory Park, L.C. v. City of Delray Beach</u>, 208 F. Supp. 2d 1320, 1325 (S.D. Fla. 2002) <u>aff'd sub nom.</u> <u>Rectory Park v. City of Delray Beach, FL.</u>, 82 F. App'x 221 (11th Cir. 2003).

## III.   <u>ARGUMENT</u>

### A. There is No Record Evidence to Support Plaintiff's Claim of General Negligence

A business owner owes two duties to an invitee under Florida law: (1) to take ordinary and reasonable care to keep its premises reasonably safe; and (2) to warn of perils that were known or should have been known to the owner and of which the invitee could not discover. <u>Delgado v. Laundromax, Inc.</u>, 65 So. 3d 1087, 1089 (Fla. 3d DCA 2011). With regard to slip and fall accidents involving transitory foreign substances in a business establishment, <u>Florida Statute §768.0755</u> prescribes an additional burden of proof that a Plaintiff must meet in order to maintain a claim for negligence:

> (1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous

condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:

> (a)   The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or
>
> (b)   The condition occurred with regularity and was therefore foreseeable.

Importantly, negligence "may not be inferred from the mere happening of an accident alone." Sammon v. Target Corp., 2012 WL 3984728 at *3, (M.D. Fla. Sept. 11, 2012)(quoting Belden v. Lynch, 126 So. 2d 578. 581 (Fla. 2d DCA 1961)). In other words, the mere fact that an invitee slips and falls on a floor does not constitute evidence of negligence. Id.

Plaintiff alleges in Count I that Defendant had a duty to maintain the floors of the premises, and that Defendant breached its duty a) in a manner that would leave no uncovered wet spots and warning signs on areas of the floor; and b) by failing to place warning signs in the area.

## 1.    Plaintiff Claims for General Negligence Fails Due to Lack of Evidence

As a threshold matter, Plaintiff cannot sufficiently identify the allegedly dangerous condition such that Defendant can be found liable for failing to maintain the premises or warn of the condition. Lago v. Costco Wholesale Corp., 233 So. 3d 1248, 1252 (Fla 3d DCA 2017) (Summary judgment should be entered when the undisputed evidence reveals simply that the floor was wet and a plaintiff slipped and fell.). Here, Plaintiff does not know what type of liquid it was, the source of the liquid, or how long it had been there. Id.  Her testimony amounts to nothing more than mere

evidence that the floor was wet and she slipped and fell.  See *Statement of Material Facts* at ¶ 7; 10; 15.  As such, summary judgment is warranted on this failure alone.

### 2.   Plaintiff's Claim for General Negligence Fails as Plaintiff Cannot Establish Defendant had Actual or Constructive Knowledge of the Alleged Liquid

A plaintiff must prove the business owner "had actual or constructive notice of the dangerous condition." Grimes v. Family Dollar Stores of Fla., Inc., 194 So. 3d 424, 427 (Fla. Dist. Ct. App. 2016).  Here, Even if Plaintiff were able to identify the type of liquid and the source, there is not a scintilla of evidence to establish Walmart had notice of the alleged dangerous condition prior to Plaintiff's fall.  There is no dispute that Walmart did not have actual notice of the liquid Plaintiff alleges was on the floor as Plaintiff has failed to adduce any evidence that Walmart was aware that liquid was present on the floor prior to Plaintiff's alleged fall. See *Statement of Material Facts* at ¶ 16.

The question then becomes whether Walmart was constructively on notice of the alleged liquid. Unlike actual knowledge, "[C]onstructive knowledge may be inferred if a dangerous condition existed for such a length of time that in the exercise of reasonable care the condition would have been known to the defendant." Grimes, 194 So. 3d at 427-28. Here, the answer is a resounding no.  The Plaintiff has failed to produce any evidence that establishes the length of time the alleged liquid was on the floor. See *Statement of Facts* at ¶ 15. In fact, Plaintiff concedes the liquid could have been present for just five seconds prior to her slip. See *Statement of Material Facts* at ¶ 15. Moreover, there is no circumstantial evidence that would support an inference that the liquid was

present for any substantial amount of time to charge Walmart with constructive notice.  Plaintiff testified there were no track or cart marks in the liquid, and testified the only footprint she observed was made by her own shoe.  See *Statement of Material Facts* at ¶ 13. Simply stated, there is insufficient evidence for a jury to determine that the condition existed for such a length of time that, in the exercise of ordinary care, Walmart should have known of the condition.

Importantly, the record evidence establishes that an **insufficient** amount of time elapsed between Walmart's last inspection of the area and the time of Plaintiff's fall.  See *Statement of Material Facts* at ¶ 18. Because all Walmart employees are tasked with inspecting and maintaining the floors of the store on a continuing basis, and because one minute before the alleged incident a Walmart associate passed through the area charged with the duty to inspect and maintain the floors and did not observe any liquid on the floor, the evidence clearly establishes that the condition which Plaintiff alleged to be dangerous could not have been present for more than one minute. See *Statement of Facts* at ¶ 11-13. Further, there is no record evidence of any substantially similar prior incidents from which it could be established that the condition occurred with any regularity and was therefore foreseeable. Plaintiff herself, a frequent patron of the subject premises, had never observed any liquid on the floor prior to or after her incident. See *Statement of Material Facts* at ¶3, ¶4.

Courts routinely grant summary judgment in a Defendant's favor when a Plaintiff fails to adduce evidence on the issue of notice. See Encarnacion v. Lifemark Hospitals of Florida, 211 So. 3d 275 (Fla. 3d DCA 2017)(affirming summary judgment

in defendant's favor where plaintiff slipped and fell but failed to present any evidence establishing how long the substance was on the floor.); Wilson-Greene v. City of Miami, 208 So. 3d 1271 (Fla. 3d DCA 2017) (same); Berbridge v. Sam's East, Inc., No. 17-14234, 2018 WL 1357372, at *2 (11th Cir. Mar. 16, 2018) (affirming summary judgment in defendant's favor where plaintiff slipped and fell on "dark" and "dirty" liquid substance because there was no triable issue as to whether substance was on the floor a sufficient amount of time to create constructive notice, relying on Encarnacion and Wilson-Greene); Russo v. Moran Foods, LLC, 2018 WL 2694535 (S.D. Fla. 2018) (granting summary judgment based on Florida law); Hill v. Ross Dress for Less, Inc., 2013 WL 6190435 (S.D. Fla. 2013) (granting summary judgment based on Florida law and holding that ten minutes is not sufficient to establish constructive knowledge when a plaintiff slipped and fell on a piece of plastic in defendant's retail store). "The mere presence of water on the floor is not enough to establish constructive notice." Delgado, 65 So. 3d at 1090.  Rather, the record must contain additional facts in support of liability, to create a permissible inference upon which plaintiff could rely in defense against a defendant's motion for summary judgment. Id.

In Delgado v. Landromax, Inc., the appellate court upheld final summary judgment in favor of a laundromat where there was insufficient evidence to establish notice of the liquid on the floor.  In Delgado, the plaintiff slipped and fell on a puddle of water just inside of the defendant Laundromat's entryway.  The trial court entered final summary judgment in favor of the defendant Laundromat.  The Third District

Court of Appeal affirmed, finding that the Plaintiff failed to produce any evidence the defendant had actual or constructive notice of the water on the floor.  The plaintiff in Delgado testified that

- she did not know where the water came from;
- she did not see water anywhere else other than where she slipped;
- she did not know how long the water was on the floor before she slipped; and
- she did not know of anyone at the laundromat who knew the water was on the floor before she walked in.

Thus, the only evidence plaintiff offered was that: (1) the floor was wet, and (2) she slipped and fell. Id.  The appellate court ruled that final summary judgment was proper because the plaintiff failed to prove the defendant had actual or constructive notice of the water on the floor.

In Lago v. Costco Wholesale Corporation, the plaintiff sued Costco after she slipped on a liquid substance and fell and broke her knee while walking into the entrance of the store.  233 So. 3d. 1248 (Fla. 3d DCA Dec. 13, 2017).  The plaintiff in Lago testified that there were no employees near the liquid, it was not raining, she did not see the liquid on the floor before she fell, she didn't know what the liquid was, she didn't know how long it had been there, and she did not see anyone else slip in the same busy entranceway before or after her fall.  Id. The Third District Court of Appeal affirmed final summary judgment in favor of Costco because there was no dispute about Costco's actual or constructive notice of the liquid.  Id. at *3.  "Without additional facts suggesting the liquid had been there for a long period of time or this

happened regularly, the trial court properly granted summary judgment in favor of Costco." Id.

In Russo v. Moran Foods LLC, the plaintiff slipped and fell on an unknown liquid while she was visiting a store owned by the defendant. 2018 WL 2694535 (S.D. Fla. 2018). In support of its motion for summary judgment, the defendant relied on video evidence that depicted a manager inspecting the area in which plaintiff fell five minutes before her fall. Id. at *2. In light of the fact that defendant's store manager had inspected the area in which plaintiff fell five minutes before her slip and fall, the court concluded that an insufficient amount of time had elapsed between the time of the inspection and the accident to impose constructive knowledge on defendant. Id. at *3.

Finally in Hill v. Ross Dress for Less, Inc., the plaintiff claimed that she slipped on a loose piece of plastic and fell in the defendant's store. 2013 WL 6190435 (S.D. Fla. 2013). The defendant presented evidence, including surveillance video, that its employee inspected the area where the plaintiff fell approximately ten minutes prior to the plaintiff's fall and did not see anything on the floor. Id. at *6. The defendant additionally presented evidence that it instructed its employees to always look out for items on the floor and to pick up any items they see. Id. The court in Hill granted the defendant's motion for summary judgment based largely on the fact that the area had been inspected ten minutes prior to the incident and nothing was found, holding:

> Because the uncontested evidence is that [the store employee] walked through the area where Plaintiff fell ten minutes before Plaintiff fell, Plaintiff has failed to meet her burden of establishing that the plastic was on the floor for a long enough period of time to charge Defendant

with constructive notice of its presence on the floor. Consequently, there is no evidence that Defendant knew or should have known of the hazardous condition, the plastic on the floor, and this should have remedied the condition. Id.

The Hill court found that "taking all of the inferences in the light most favorable to Plaintiff, it is insufficient as a matter of law to infer that Defendant had constructive notice of a dangerous condition." Id.

Just as in the cases discussed above, Plaintiff cannot meet her burden of establishing that Walmart had actual or constructive notice of the alleged liquid on the floor.  There is no record evidence to suggest the liquid had been there for a long enough period of time to invite corrective measures or that this type of incident happened with any regularity.  This is the exact evidence the courts in Encarnacion, Delgado and Lago determined was insufficient as a matter of law to establish notice to the business owner.  Moreover, there is record evidence that the area of Plaintiff's incident was inspected one minute before her alleged incident. Based upon Russo and Hill, the liquid had not been in the area for a long enough period of time to invite corrective measures or that this type of incident happened with any regularity. It is abundantly clear from the evidence, or the lack thereof, that there is no issue of fact as to whether Walmart had constructive notice of the alleged liquid.

Thus, in accordance with the above authorities, this Court should find there is no evidence of Walmart's actual or constructive notice of the alleged liquid and summary judgment should be entered in favor of Walmart.

### B. There is No Record Evidence to Support Plaintiff's Claims pursuant to *Respondeat Superior*, Negligent Hiring and Retention, or Negligent Supervision

1. **Negligence Pursuant to _Respondeat Superior_**

In order to prevail on a claim under the theory of respondeat superior, Plaintiff must establish that the active tortfeasor's conduct was within the course and scope of his or her employment. To do that, Plaintiff must establish that (1) the conduct is of the kind the employee is hired to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master. Fernandez v. Florida National College, Inc., 925 So. 2d 1096, 1100, (Fla. 3rd 2006); Special Olympics Florida, Inc v. Showalter, 6 So. 3d 662, 665 (Fla. 5th DCA 2009); Kane Furniture Corporation v. Miranda, 506 So. 2d 1061, 1067 (Fla. 2nd DCA 1987).

Plaintiff's Complaint alleges that Walmart's maintenance employee and/or manager was given the responsibility to properly maintain, clean, remove and/or place warnings signs near the spilled liquid in order to protect the stores customers from any and all danger that is open and obvious, and failed to do so, and as such, Walmart is liable for its maintenance employee and manager's actions. [DE 25, ¶ 24-25].   As a threshold matter, Plaintiff has failed to identify and name as defendants the purported employee and manager referenced in her claim for negligence under _respondeat superior_. Fictitious-party pleading is not permitted in federal court. Richardson v. Johnson, 598 F. 3d 734, 738 (11th Cir. 2010).

Notwithstanding, while Plaintiff alleges that the maintenance employee and/or manager were "actively negligent" in failing to maintain the premises, it is generally held that the store's owner/operator is solely liable for the tort. Importantly,

Plaintiff does not allege any duty owed by the employees that is independent of the Defendant's duty to maintain and duty to warn asserted under Plaintiff's claims for general negligence. At bottom, Plaintiff's claims for negligence under a theory of *respondeat superior* are repetitive of the allegations contained within Plaintiff's general negligence claim and fail for the same reasons: there is no evidence that Walmart, the maintenance employee or the store manager had notice of the allegedly dangerous condition such that it would impute liability upon Walmart under a theory of *respondeat superior*. As such, Plaintiff's claim for employee negligence and *respondeat superior* fail as a matter of law and summary judgment in favor of Walmart on Count II is proper.

## 2. **Negligent Hiring and Retention**

In order to prevail on a claim of negligent hiring and retention, Plaintiff must prove that (1) the employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the unsuitability of the employee for the particular duty to be performed, or for the employment in general; and (3) it was unreasonable for the employer to hire the employee in light of the information he knew or should have known. Garcia v. Duffy, 492 So.2d 438, 439 (Fla. 2d DCA 1986). In order to establish a breach of the duty to exercise reasonable care in retention of an employee, the Plaintiff must prove that once an employer received active or constructive notice of problems with an employee's fitness, it was unreasonable for the employer not to investigate or take corrective action such as discharge or reassignment. Id. at 441.

Under Florida law, an employer can only be liable for negligent hiring, training, and retention of an employee if the employee was acting outside of the course and scope of his employment with that employer and then only under the doctrine of *respondeat superior.* Id. at 438; citing Thurston v. Morrison, 142 So. 2d 291 (Fla. 2d DCA 1962).

Plaintiff alleges in Count III, Negligent Hiring & Retention,, that Walmart selected, hired, and retained employees to perform work as a commercial cleaning services and that Walmart should have known its employees lack of responsibility and follow up in *maintaining and placing warning signs* on the wet surface floors during its work and responsibilities of the job. [DE 25, ¶ 31-32]. Plaintiff conflates negligence as a result of a failure to maintain the premises and negligence as a result of negligent hiring and retention. Plaintiff has failed to allege or adduce any evidence that any employees/agents/representatives of Walmart were acting outside of the course and scope of their employment and has further failed to adduce **any** information as to the (un)suitability of its employees to maintain its premises and warn guests of dangerous conditions which are known to them. As such, Plaintiff is unable to establish a breach of Defendant's duty to exercise reasonable care in the hiring and/or retention of an employee.

Furthermore, since Walmart did not have actual or constructive notice of the alleged liquid, argued *supra*, it did not have actual or constructive notice of problems with any employee's fitness sufficient to establish a breach of Walmart's duty as an employer to investigate or take corrective action. Because Walmart is entitled to

summary judgment due to the lack of actual or constructive notice of the alleged liquid, the claim against Walmart arising out Walmart's purported knowledge of the lack of performance of any employee is derivative of the negligence claim against Walmart.

As such, Plaintiff's claim for negligent hiring and retention fail as a matter of law and summary judgment in favor of Walmart on Count III is proper.

### 3.  Negligent Supervision

Again, in Count IV, Plaintiff alleges Defendant breached its duty to *maintain the premises* by failing to supervise, prohibit, control or regulate its employees negligent conduct and inactions. [DE 25, ¶ 38].   Plaintiff, again, conflates negligence as a result of a failure to maintain the premises, and negligence as a result of negligent supervision.

In order to prevail on a claim for negligent supervision, Plaintiff must establish (1) the existence of a relationship giving rise to a legal duty to supervise; (2) the negligent breach of that duty; and (3) that the negligence was the proximate cause of plaintiff's injury." Collins v. Sch. Bd. of Broward County, 471 So. 2d 560, 563 (Fla. 4th DCA 1985); see also Dep't of Envtl. Prot. v. Hardy, 907 So. 2d 655, 660 (Fla. 5th DCA 2005) Where negligence is premised on a theory of negligent supervision, the legal focus is the alleged negligence on the part of the defendant in failing to respond to a known possible intentional act of a third party. The plaintiff must point to something that would put the defendant on notice such that the Defendant knew or should have known of the potential for **an intentional tort or criminal activity** of

the third party that was the cause of the plaintiff's alleged injury. Sunshine Birds and Supplies, Inc. v. U.S. Fidelity and Guaranty Co., 696 So.2d 907 (Fla. 3d DCA 1997).

Here, it was not an intentional tort or criminal activity of a third party that caused Plaintiff's alleged fall.  In fact, Plaintiff merely asserts that it was Walmart's employees disregard for their duty to maintain the premises that "actually caused" Plaintiff to slip and fall. [DE 25, ¶ 39].Plaintiff has failed to allege or adduce any evidence that any employees/agents/representatives of Walmart engaged in intentional conduct outside of the scope of their employment giving rise to Plaintiff's alleged injuries. As such, Plaintiff has failed to create any question of fact that would support a finding of liability against Walmart for negligent supervision or defeat summary judgment on this claim.

Furthermore, because Walmart is entitled to summary judgment due to the lack of actual or constructive notice of the alleged liquid, argued *supra*, the claim against any employee of Walmart, or claims arising out of the hiring or supervision of any employee of Walmart, is derivative of the negligence claim against Walmart.

### A. There is No Record Evidence of Medical Causation

The determination of what actually caused Plaintiff's injuries is outside the scope of the average lay person and requires expert testimony. See Lane v. Walgreen Co., 2014 WL 2881543, at *8 (S.D. Ind. June 24, 2014)("[E]xpert testimony is generally required to create a material issue of fact where a plaintiff's claims raise a question of medical causation beyond the understanding of lay jurors and [are]

'necessarily dependent on the testimony of physicians and surgeons learned in such matters."')(quoting Brown v. Terre Haute Reg'l Hosp., 537 N.E. 2d 54, 61 (Ind. Ct. App. 1989)).  Here, Plaintiff has failed to identify any experts who will testify as to the causation of Plaintiff's injuries.  The only disclosure made by Plaintiff was in the form of a Rule 26 disclosure wherein Plaintiff asserts her treating physicians will testify "to details of injuries suffered."  Moreover, even if Plaintiff intended for her treating physicians to testify to the issue of medical causation, Plaintiff has failed to offer any expert disclosure pursuant to this Court's Order and Fed. R. Civ. P 26.

Because Plaintiff alleges that she sustained a cervical disc disruption at C4/5, radiculopathy at C5, and a right knee injury resulting from her fall at Walmart without support from any medical expert, her claim must fail.   Plaintiff has undergone cervical facet injections, a C4-C5 discectomy and insertion of MOBI-C total disc replacement, right knee arthroscopy, partial medial and lateral meniscectomy, and excision of symptomatic plica. See Statement of Facts at ¶ 22. To the extent Plaintiff argues that Plaintiff's treating physicians, Dr. Brodsky and Dr. Hutchinson offered causation "opinions" during their deposition testimony, such opinions are inadmissible due to Plaintiff's failure to comply with Rule 26. Treating physicians offering opinions beyond those arising from treatment are experts from whom full Rule 26(a)(2)(B) reports are required. See Goodman v. Staples The Office Superstore, LLC, 644 F.3d 817, 826 (9th Cir. 2011); Meyers v. National R.R. Passenger Corp. (Amtrak), 619 F.3d 729, 734–35 (7th Cir. 2010). "[I]f a health care professional is asked to give **any additional opinions, beyond those procured directly from**

**treatment, then for those additional opinions to be admissible, Plaintiff must first provide the full written disclosures required by Rule 26(a)(2)(B)."** Sweat, 2015 WL 8270434, at *2 (M.D. Fla. 2015). Cir. 2010). "[W]hen the testimony of the treating physician or provider … includes opinions on causation, prognosis, and/or future implications of the injury, then he or she **must provide a full report** satisfying the requirements of Federal Rule of Civil Procedure 26(a)(2)(B)." Muzaffarr v. Ross Dress for Less, Inc., 2013 WL 3850848, at *1 (S.D. Fla. July   26, 2013)(SCOLA)**(emphasis added)**. Since Plaintiff did not provide a report in compliance with Rule 26, her treating physicians are prohibited from offering opinions pertaining to causation of her injuries.

The only admissible opinions as to the cause of Plaintiff's injuries are that of Defendant's experts who have opined that Plaintiff's conditions were pre-existing and that the treatment rendered, including surgical management of the cervical spine and right knee, and the multitude of pain management procedures, was not related to Plaintiff's May 7, 2017 incident at Walmart.

Accordingly, as Plaintiff cannot establish medical causation, Walmart is entitled to summary judgment as a matter of law.

## IV.   CONCLUSION

Pursuant to Florida Statute §768.0755, the burden is on Plaintiff to show that Walmart had actual or constructive knowledge of the liquid on the floor. Plaintiff, however, has failed to offer any evidence that Walmart knew of the liquid, that the liquid existed for any length of time such that Walmart should have known of it, or

that the liquid occurred with any regularity. The evidence that Plaintiff has provided, that she slipped and fell on liquid, is not sufficient to find Walmart negligent as a matter of law. Since Plaintiff cannot establish a claim for negligence against Walmart, her remaining actions pursuant to *respondeat superior*, negligent hiring and retention, and negligent supervision must fail. Furthermore, Plaintiff has failed to allege the identity of any employees or agents to support these derivative causes of action. Lastly, Plaintiff is unable to establish medical causation to prove her alleged damages were the result of her May 7, 2017 incident at Walmart. Accordingly, this Court should enter summary judgment in favor of Walmart.

Respectfully submitted,

*/s/ **Amanda J. Sharkey Ross***
Amanda J. Sharkey Ross, Esq.
Madison P. Allen, Esq.

I HEREBY CERTIFY that on May 28, 2020  I filed the foregoing with the Clerk of the Court which will send a notice of electronic filing to the following:

Victor M. Arias, Esq.
Sannestine Fortin, Esq.
Arias Law Firm, P.A.
3013 Del Prado Blvd., Suite 6
Cape Coral, FL 33904
Telephone: 239-945-2121
varias@ariaslawfirm.com; sfortin@ariaslawfirm.com
Attorneys for Plaintiff

*/s/*

AMANDA J. SHARKEY ROSS
Florida Bar No. 598666
MADISON P. ALLEN
Florida Bar No. 1011247
Attorneys for Defendant, Walmart Inc.
HENDERSON, FRANKLIN, STARNES
& HOLT
Post Office Box 280
Fort Myers, Florida 33902-0280
Telephone: 239.344.1249
Fax: 239.344.1542
amanda.ross@henlaw.com
tracey.salerno@henlaw.com
madison.allen@henlaw.com
susan.peters@henlaw.com