UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ELBA NIEVES,

    Plaintiff,

v.                                          Case No.: 2:19-cv-00474-JLB-NPM

WALMART STORES EAST, LP,

    Defendant.
_____/

## ORDER

In 2017, Plaintiff Elba Nieves slipped and fell in the produce section of a Walmart store in Cape Coral, Florida. Two years later, she sued Defendant Walmart Stores East, LP ("Walmart") for negligence. Walmart now moves for summary judgment on all counts in Ms. Nieves's Amended Complaint. (Doc. 53.) After a careful review of the record, the Court holds that Walmart is entitled to summary judgment on Count I (negligence) because Ms. Nieves will not be able to carry the burden of proof imposed by section 768.0755, Florida Statutes. The Court also grants summary judgment in favor of Walmart on the remaining counts in Ms. Nieves's Amended Complaint because they are all derivative of Count I.

### STATEMENT OF FACTS

On the afternoon of May 7, 2017, Ms. Nieves went to Walmart to purchase ingredients for a salad. (Doc. 53-2 at 48:23–49:1.) Her boyfriend and nephew rode with her to the store and waited for her in the car. (Id. at 52:1–13.) Ms. Nieves testified that she went straight to the produce section after arriving. (Id. at 49:19–

20.) At approximately 6:05 p.m., security footage shows Ms. Nieves entering the produce section and walking through a narrow aisle between the apple bins and the berry case.[1] (Doc. 53-4 at 33:7–24.) The camera's view of the aisle is mostly obstructed by a large beam, and the quality of the footage is poor, but the parties' deposition testimony adds context. The aisle is wide enough to accommodate two shopping carts going in opposite directions. (Id. at 33:14–17.) There is a flower box in the aisle, alongside the berry case. (Doc. 53-2 at 53:24–54:4.) Importantly, the aisle is several feet away from the so-called "wet wall"—the area of the produce department where vegetables are regularly sprayed by water to keep them fresh and crisp. (Doc. 53-3 at 26:22–27:4; Doc. 53-4 at 56:24–57:25.) Although the wet wall would be visible to a shopper standing in the aisle, it is on the other side of the berry box. (Doc. 53-4 at 57:22–25.)

As Ms. Neives walked through the aisle—and behind the beam obstructing the camera's view—the footage shows her right leg suddenly slip forward (in the direction of her shopping cart) while her left knee hits the ground. The exact spot where Ms. Nieves slipped is entirely concealed by the beam in the surveillance video footage. In her deposition, Ms. Nieves testified that when she "stood up and looked back," she saw a puddle of clear liquid on the floor, which she described as "[l]arger than a . . . watermelon." (Doc. 53-2 at 53:3–54:10.) But she also stated that she had no idea how long the liquid had been on the floor, where it came from, or what it

---

[1] The security footage is Exhibit D to Walmart's motion for summary judgment (Doc 53-5) and was provided to the Court in mp4 format on a CD-ROM.

was—all she knows is that the liquid was clear. (Id. at 60:4–24.) After slipping, Ms. Nieves testified that she called her boyfriend on her cellphone and told him to "come and get" her because she had slipped, and her knee was bothering her. (Id. at 63:9–12.) When her boyfriend entered Walmart and located her, Ms. Nieves asked him to go find a Walmart employee, which he did. (Id. at 63:18–64:4.)

The next several minutes of security footage show multiple employees in the area where Ms. Nieves slipped—they appear to be inspecting the floor and speaking to Ms. Nieves and her boyfriend. Ms. Nieves testified that the employees offered her some ice and a chair to sit on (the chair is visible in the footage). (Id. at 64:6–10.) They also asked her to write an incident report, which she completed in Spanish. (Id., Ex. 4.) There is no certified translation of the report in the record, but Ms. Nieves read it (through a translator) during her deposition, and it does not contain any helpful details about the liquid she saw on the floor. (Id. at 65:15–20.)

At approximately 6:31 p.m., the footage shows Ms. Nieves leaving the produce aisle with her boyfriend; she is walking with a slight but visible limp. Shortly afterwards, a Walmart employee is seen dropping an orange object (identified as a cone) in front of the area where Ms. Nieves slipped and cleaning the area with a long-handled mop for approximately one minute. (Doc. 53-3 at 22:20–23:13.) In his deposition, the employee who cleaned the floor could not remember any helpful details—he assumed that there may have been some type of liquid on the floor because he was mopping, but he generally did not recall the incident. (Id. at 28:15–29:4.) He also did not recall whether the mop he used was dry or wet. (Id.

3

at 53:25–54:3.) Another employee who responded to the incident—an assistant store manager—likewise did not recall whether he saw any "wet spots" on the floor that day. (Doc. 53-4 at 25:4–6.) When shown the footage of the floor being cleaned after Ms. Nieves left, the assistant store manager testified that the purpose of putting down the cone and mopping the area was to clean up any "bodily fluids" resulting from the fall, not necessarily to clean up the clear liquid which allegedly caused the fall. (Id. at 54:19–25.) The assistant store manager likewise did not recall whether the mop used to clean the area was dry or wet. (Id. at 55:11–12.)

During Ms. Nieves's deposition, she was shown a black-and-white photo of the spot where she fell. (Doc. 53-2, Ex. 3.) The photo appears to have been taken on the day of the incident, but like the security footage, its quality is poor. Some black marks are visible on the floor in the photograph; Ms. Nieves testified that these marks were created by the rubber sandals she was wearing when she slipped. (Id. at 59:6–14.) Yet there is no discernable liquid on the floor in the photograph, and there are no other visible marks besides the ones created by Ms. Nieves's sandals.

The security footage provided to the Court goes as far back as one hour before the incident. During that hour, multiple shoppers can be seen walking through the aisle between the apple bins and the berry case. None of them appear to slip, spill anything, or give any indication of how long the liquid allegedly responsible for Ms. Nieves's fall was on the floor. At approximately 6:00 p.m., an employee can be seen pushing a shopping cart directly through the aisle where Ms. Nieves slipped five minutes later—the employee does not slip, look down, or otherwise react to

4

anything on the floor.  At approximately 6:04 p.m., one minute before the incident, another Walmart employee walks quickly through the aisle in the same direction as Ms. Nieves did—once again, the employee does not slip, look down, or give any indication that the floor is wet.

Approximately two years after she slipped in the Cape Coral store, Ms. Nieves sued Walmart in state court, and Walmart removed to this Court.  (Docs. 1, 1-1.)  Walmart now moves for summary judgment on all counts.  (Doc. 53.)

## LEGAL STANDARD

Summary judgment is only appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In other words, summary judgment is warranted if a jury, viewing all facts and any reasonable inferences therefrom in the light most favorable to plaintiffs, could not reasonably return a verdict in plaintiffs' favor."  Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1581 (11th Cir. 1995) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  Id.

Crucially for this case, "an inference is not reasonable if it is 'only a guess or a possibility,' for such an inference is not based on the evidence but is pure

5

conjecture and speculation." Daniels v. Twin Oaks Nursing Home, 692 F.2d 1321, 1324 (11th Cir. 1982) (quoting Green v. Reynolds Metals Co., 328 F.2d 372 (5th Cir. 1964)). Although all inferences are "at least partially conjectural," a trier of fact "will not be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or merely possibility." Id. at 1326 (citing Helene Curtis Indus., Inc. v. Pruitt, 385 F.2d 841, 851 (5th Cir. 1967)).

## Discussion

I. **Walmart is entitled to summary judgment on Count I (negligence) because Ms. Nieves cannot satisfy the burden of proof in section 768.0755, Florida Statutes.**

"Federal courts sitting in diversity apply the substantive law of the state in which the case arose." Pendergast v. Sprint Nextel Corp., 592 F.3d 1119, 1132 (11th Cir. 2010) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)). The axiomatic elements of a Florida negligence claim are: (1) duty, (2) breach, (3) causation, and (4) damages. See Clampitt v. D.J. Spencer Sales, 786 So. 2d 570, 573 (Fla. 2001) (citation omitted).

Premises owners in Florida generally "owe a duty to their invitees to exercise reasonable care to maintain their premises in a safe condition." Owens v. Publix Supermarkets, Inc., 802 So. 2d 315, 320 (Fla. 2001), superseded by statute on other grounds, as stated in Pembroke Lakes Mall Ltd. v. McGruder, 137 So. 3d 418, 423–24 (Fla. 4th DCA 2014). But section 768.0755, Florida Statutes, modifies the duty component of a negligence claim founded on premises liability when invitees are injured by "transitory foreign substances." See Lago v. Costco Wholesale Corp., 233 So. 3d 1248, 1250 (Fla. 3d DCA 2017) (collecting cases). The phrase "transitory

6

foreign substance" has been held to mean "any liquid or solid substance, item or object located where it does not belong." Owens, 802 So. 2d at 317 n.1 (citing Foreign Substance, Black's Law Dictionary 660 (7th ed. 1999)).

> Section 768.0755(1) provides the following in relevant part:
>
> (1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:
>
>> (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or
>>
>> (b) The condition occurred with regularity and was therefore foreseeable.

In other words, section 768.0755 imposes an additional burden on plaintiffs in slip-and-fall cases to prove "actual or constructive knowledge of the dangerous condition" created by transitory foreign substances. "Actual knowledge of a dangerous condition exists when a business owner's employees or agents know of or create the dangerous condition." Palavicini v. Wal-Mart Stores E., LP, 787 F. App'x 1007, 1010 (11th Cir. 2019) (citing Barbour v. Brinker Fla., Inc., 801 So. 2d 953, 957 (Fla. 5th DCA 2001)). After careful review of Ms. Nieves's opposition to summary judgment, she does not appear to contend that any Walmart employee had actual knowledge of the clear liquid that she slipped on. Her only argument seems to be that there are disputed facts from which a trier of fact may infer that Walmart had at least constructive knowledge of the clear liquid that Ms. Nieves slipped on. (Doc.

7

60 at 11–14, 16.)  But after studying the record evidence, the Court agrees with Walmart's argument that no reasonable trier of fact could infer constructive knowledge of the liquid by Walmart—any such conclusion would be a wild guess, not a reasonable inference.  See Daniels, 692 F.2d at 1324, 1326.

Section 768.0755(1) provides that constructive knowledge may be shown through circumstantial evidence that: (a) "[t]he dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition"; or (b) "[t]he condition occurred with regularity and was therefore foreseeable."  For example, evidence that a substance has been on the floor for a long time "may include 'dirt, scuffing, or tracks in [the] substance.'"  Pussinen v. Target Corp., 731 F. App'x 936, 937 (11th Cir. 2018) (quoting Woods v. Winn Dixie Stores, Inc., 621 So. 2d 710, 711 (Fla. 3d DCA 1993)).

But Ms. Nieves cannot satisfy her statutory burden by pointing to evidence "(1) that the floor was wet; and (2) she slipped and fell."  Delgado v. Laundromax, Inc., 65 So. 3d 1087, 1090 (Fla. 3d DCA 2011).  Florida law requires that "the record must contain additional facts to create a permissible inference regarding the amount of time the [liquid] had been on the floor."  Palavicini, 787 F. App'x at 1013 (citing Delgado, 65 So. 3d at 1090).  Here, after carefully reviewing the record, the Court cannot identify a single fact from which a reasonable jury could infer that the clear liquid Ms. Neives described was on the floor for any ascertainable length of time—let alone long enough for Walmart to have constructive knowledge of it, which is what Florida law requires.

8

All Ms. Nieves knows about the liquid is that it was clear. In her deposition testimony, she candidly admitted that she had no idea how long the liquid had been on the floor, where it came from, or what it was. (Doc. 53-2 at 60:4–24.) Although some black marks are visible in the black-and-white photograph of the floor, Ms. Nieves testified that these marks were created by her own rubber sandals, not by other passersby. (Id. at 53-2 at 59:6–14.) It is not clear from the photograph whether these black marks are submerged in liquid or simply scuffmarks on dry floor tiles—no liquid of any kind is visible anywhere in the photograph. Accordingly, there is no evidence in this record of "dirt, scuffing, or tracks" from which a trier of fact may infer that the clear liquid was on the floor long enough for Walmart to have constructive knowledge of it. Pussinen, 731 F. App'x at 937 (quoting Woods, 621 So. 2d at 711).

As to the security video footage, it is largely unhelpful because the camera's view of the spot where Ms. Nieves slipped is obstructed by a large beam. Although the footage clearly shows Ms. Nieves slipping, it is impossible to discern what (if anything) she slipped on—let alone when or how the clear liquid that she identified in her deposition got on the floor. A juror would literally need x-ray vision to infer anything of value from the security footage.

Ms. Nieves attempts to make use of the security footage by arguing that two children who appear on camera may have spilled the clear liquid. (Doc. 60 at 3–4.) Specifically, she points to: (1) a baby sitting in a shopping cart who she claims was "swinging [a] baby bottle or sippy cup"; and (2) a "small girl" who "walks . . .

9

playfully" in the area where Ms. Nieves fell "with an unidentifiable object in her hand." (Id. at 4.) According to Ms. Nieves, a trier of fact may reasonably infer that these children spilled the clear liquid. After carefully viewing the portions of the footage where these children appear, the Court is certain that Ms. Nieves's theories are nothing but guesses which are impossible to support (even inferentially) based on the record in this case.

The footage is not good enough to determine whether the baby is holding a "sippy cup," let alone whether something spilled out of the supposed "sippy cup" in an area completely obscured by a beam. Likewise, there is no way to tell what the "small girl" is holding or whether she is responsible for the spill in any way. Ms. Nieves could just as easily have pointed to any other shopper and alleged that they were the ones who spilled the liquid. These are not reasonable inferences which create a genuine issue of material fact to preclude summary judgment. They are shots in the dark. See Oliver v. Winn-Dixie Stores, Inc., 291 So. 3d 126, 129 (Fla. 4th DCA 2020) (explaining that an unclear surveillance video in a case involving section 768.0755 "does not create a material issue of fact"); see also King v. Wal-Mart Stores E., LP, No. 1:13-CV-2763-WSD, 2014 WL 4248417, at *5 (N.D. Ga. Aug. 27, 2014) (applying similar constructive knowledge element under Georgia law and concluding: "Having reviewed the video, the Court knows that the spilled liquid and the 12–pack Sprite carton are not visible on the video and it is not possible to determine when the spill occurred.").

The Court further notes that in the minutes leading up to Ms. Nieves fall, others walking in the area where she fell do not themselves slip or gave any indication that they noticed a liquid on the floor. The security footage for the hour preceding Ms. Nieves's slip and fall shows multiple shoppers walking through the aisle between the apple bins and the berry case where Ms. Nieves fell. The footage also shows at least two Walmart employees in the produce section in the minutes prior to the incident. Neither the shoppers nor the Walmart employees slip, look down, or give any hint that there is a liquid present on the floor.

Ms. Nieves next argues that an issue of material fact exists because she slipped and fell in the produce department, which contains "coolers that sprinkle water on the produce." (Doc. 60 at 2.) Based on the presence of these "coolers," Ms. Nieves speculates that "water from condensation in a produce department is a common occurrence," and therefore Walmart "should have known of the existence of water in the produce department." (Id. at 11.) This argument appears to implicate the second constructive knowledge theory permitted by section 768.0755(1): "[t]he condition occurred with regularity and was therefore foreseeable." § 768.0755(1)(b), Fla. Stat. Essentially, Ms. Nieves argues that water on the floor of a produce section in a grocery store is always foreseeable, and therefore Walmart should have known of the clear liquid she slipped on—which was presumably water. This argument suffers from several infirmities.

To begin with, Ms. Nieves cites no record evidence that "water from condensation . . . is a common occurrence" in the spot where she slipped. In fact, the

11

scant record evidence seems to contradict her theory. An assistant manager from Walmart testified that the wet wall in the produce department is on the other side of the berry box near which Ms. Nieves slipped. (Doc. 53-4 at 57:22–25.) The security footage shows the wet wall, and although it would be visible from the spot where Ms. Nieves slipped, it looks to be at least twenty-five or thirty feet away. Moreover, the employee who mopped the area where Ms. Nieves fell testified (through a translator) that the produce in the area where Ms. Nieves slipped is <u>not</u> regularly sprayed with water, unlike the wet wall. (Doc. 53-3 at 26:22–27:4.) There is simply no basis to conclude that water from the fresh vegetables near the wet wall somehow found its way over to the aisle between the apple bins and the berry case. Once again, Ms. Nieves's argument is merely a guess, which does not create a genuine issue of material of fact. See <u>Daniels</u>, 692 F.2d at 1324, 1326.

Perhaps more importantly, Ms. Nieves's argument presumes that what she slipped on was indeed water. But as she stated during her deposition, Ms. Nieves has no idea what the clear liquid was. In fact, she was asked by opposing counsel whether she believed that she slipped on water or something else, and she answered that she simply did not know:

> [Walmart's counsel]: And you don't know what type of liquid it was, correct?
>
> [Ms. Nieves]: No.
>
> [Walmart's counsel]: <u>Could have been water or Sprite or some other type of liquid; correct?</u>
>
> [Ms. Nieves]: It was clear.
>
> [Walmart's counsel]: That's all you know, it was a clear liquid; correct?

12

>    [Ms. Nieves]:  Yes.

(Doc 53-2 at 60:16–24) (emphasis added).  At bottom, the Court cannot conclude that a slip-and-fall's location in a produce section, without more, necessarily renders the presence of transitory foreign substances foreseeable under Florida law.  Cf. Phillips v. Surfside Ventures Inc., 821 F. App'x 957, 960 (11th Cir. 2020) (applying Florida law and rejecting argument that seafood restaurant's proximity to the beach resulted in regularly foreseeable wet floors because this argument was based on a mere hunch that was "unsupported by any probative evidence"); Pussinen, 731 F. App'x at 939 (applying Florida law and rejecting argument that spills regularly occurred in the toy aisle of a Target store due to the frequent presence of children because there was no evidence to support this assumption).

The Eleventh Circuit's unpublished opinion in Palavicini applies Florida law and provides a helpful basis for comparison.  In that case, the plaintiff also slipped on the floor of a Walmart store, and an employee told her that an "air conditioning vent above the incident area had been leaking for one week prior to the incident." 787 F. App'x at 1009.  One of the plaintiff's arguments was that the air vent leaked with regularity.  Id. at 1014.  The Eleventh Circuit affirmed the district court's summary judgment in favor of Walmart despite testimony and sworn affidavits from Walmart employees indicating that the air conditioning unit had leaked in the past, as well as a work order indicating that a leak in the air conditioning was fixed two months before the incident.  Id.  The Eleventh Circuit reasoned that none of this evidence was sufficiently specific to support the plaintiff's "regularity"

13

argument because: (1) it was unclear when, where, and how often the prior leaks occurred; (2) the sworn affidavit described an inspection of the air conditioning unit four years prior to the incident; and (3) one work order from two months ago was insufficient to demonstrate that the unit leaked with regularity. Id. at 1014–15.

Compared to the evidence in this case—which is basically nonexistent—the evidence in Palavicini was far more comprehensive, but the Eleventh Circuit still rejected the plaintiff's argument that a reasonable juror could conclude that the air conditioning unit leaked with regularity. If the evidence in Palavicini was not enough to survive summary judgment, then surely the mere location of Ms. Nieves's incident in a produce aisle does not create a material issue of fact.

In sum, after viewing the record evidence in the light most favorable to Ms. Nieves, the Court holds that Ms. Nieves cannot satisfy her statutory burden to prove (by inference or otherwise) that the clear liquid she allegedly slipped on was present long enough for Walmart to know about it, or that the liquid's presence was foreseeable because it was a regular occurrence. Accordingly, Walmart is entitled to summary judgment on Ms. Nieves's negligence claim. While section 768.0755(1) may pose a significant hurdle for slip-and-fall plaintiffs in Florida, the Court will not second-guess the Florida Legislature's policy of imposing a stricter burden in these types of cases—that is not the Court's role.

## II. Walmart is entitled to summary judgment on the remainder of Ms. Nieves's claims because they are all derivative of Count I.

In addition to her negligence claim, Ms. Nieves also asserts causes of action for respondeat superior (Count II), negligent hiring and retention (Count III), and

14

negligent supervision (Count IV).  (Doc. 25 at 5–9.)  These counts are all derivative of Ms. Nieves's negligence claim.  Because the Court has already determined that Walmart is entitled to summary judgment on the negligence claim, it must also grant summary judgment on these derivative claims.  See, e.g., Schutt v. Lewis, No. 6:12-CV-1697-ORL-37, 2014 WL 3908187, at *6 (M.D. Fla. Aug. 11, 2014) ("Plaintiffs' negligent training and negligent supervision claims require a showing of some underlying tortious conduct committed by an employee."); Scott v. SWH Corp., No. 6:08-CV-151-ORL31GJK, 2008 WL 4080213, at *1 (M.D. Fla. Aug. 28, 2008) ("Respondeat superior is not a tort in and of itself, instead it is a theory under which one might prove liability for a tort."); Kelleher v. Pall Aeropower Corp., No. 8:00-CV-365-T-26EAJ, 2001 WL 485119, at *5 (M.D. Fla. Feb. 8, 2001) ("Absent an underlying tort, negligent retention cannot stand.").

## CONCLUSION

After viewing the facts in the light most favorable to Ms. Nieves, it is abundantly clear to the Court that she cannot, as a matter of law, satisfy the burden of section 768.0755, Florida Statutes, to survive summary judgment.  Accordingly, Walmart's motion for summary judgment (Doc. 53) is **GRANTED**.  The Clerk is **DIRECTED** to enter judgment in favor of Walmart and close the case.

**ORDERED** in Fort Myers, Florida, on October 21, 2020.

**JOHN L. BADALAMENTI**
**UNITED STATES DISTRICT JUDGE**